**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
NICHOLAS BADOLATO,

                Plaintiff,                              **ORDER ON**
                                                                             **MOTION *IN LIMINE***

      - against -
                                                                                   CV 14-1528 (AKT)

LONG ISLAND RAIL ROAD COMPANY,

                Defendant.
-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.     PRELIMINARY STATEMENT**

Plaintiff Nicholas Badoloto ("Plaintiff") brings this action under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, to recover damages for personal injuries he sustained while employed by the Defendant Long Island Railroad Company ("LIRR"). The LIRR has conceded liability and a jury trial on the issue of damages is scheduled to commence on November 9, 2016. Presently before the Court is Plaintiff's motion *in limine* seeking an Order precluding the LIRR from (1) offering expert testimony by Dr. Gregg M. Szerlip, D.O.; (2) introducing Dr. Szerlip's medical report and records into evidence; and (3) offering expert testimony by LIRR employee Christopher M. Yodice. *See generally* Attorney Affirmation of Michael D. Flynn in Support of Motion to Preclude ("Flynn Affirm.") [DE 21-2]; Memorandum of Law in Support of Plaintiff's Motion *In Limine* ("Pl.'s Mem.") [DE 21-8]. The LIRR opposes the motion. *See generally* Affirmation of William J. Blumenschein In Opposition ("Blumenschein Affirm.") [DE 22]; Def.'s Memorandum of Law ("Def.'s Opp'n") [DE 22-7]. For the reasons discussed below, Plaintiff's motion is GRANTED.

## II. BACKGROUND

The following factual background is derived from the pleadings and the parties' submissions on this motion. The Court summarizes only those facts relevant to its determination of the motion *in limine*.

Plaintiff brought this suit against the LIRR to recover for injuries he sustained on May 5, 2013 while performing track work. *See* Compl. ¶¶ 7, 9. Plaintiff alleges that an entire length of rail fell on his left foot, crushing his foot into the ballast. *See* Flynn Affirm. ¶ 5; *see also* Compl. ¶ 9.

Between May 5, 2013 and June 11, 2013, Plaintiff was classified by the LIRR as "D/A (disability accident)" status. *See* Blumenshein Affirm. ¶ 4 (a)-(b). Under this classification, Plaintiff was paid his full wages while out of work due to his on-the-job injury. *See id.* On June 12, 2013, the LIRR changed Plaintiff's status to "D/S (disability sick)." *Id.* ¶ 4(c). According to the LIRR, Plaintiff's status was changed to D/S because a physician in the LIRR's Medical Department "determined [that Plaintiff's] injury was a contusion and had essentially resolved." *Id.* Under D/S status, Plaintiff was no longer paid for his time off work and was required to use sick leave. *See id.*

The terms and conditions of Plaintiff's employment were governed by the Collective Bargaining Agreement ("CBA") between the Sheet Metal, Air, Rail and Transportation Union ("the Union") and the LIRR. Under the CBA, a "panel" or "neutral" doctor may be selected by the parties to resolve a dispute between the LIRR and the employee's treating physician regarding the employee's ability to return to work. *See* Excerpts of CBA, annexed to Flynn Affirm. at Ex. 5, p. 25. In addition, the CBA requires that the following question be put to the panel doctor: "'In your professional medical opinion is the employee's disability a result of the

on-the-job injury?'" *Id.* The CBA states that the panel doctor's decision is deemed "controlling." *Id.*

On July 3, 2013, Anthony Simon, the General Chairman of the Union, wrote a letter to the Assistant Director of the LIRR's Medical Facility regarding the change in Plaintiff's disability status and to request that Plaintiff be evaluated by a panel doctor. *See* Letter by Anthony Simon ("Simon Ltr."), annexed as Ex. D to Blumenschein Affirm. Simon's letter states:

> The above -referenced employee suffered an on-the-job injury and reported to the Carrier's Medical Department. At the time he was classified D/A, but his status was changed to D/S indicating he "has had sufficient time for his claimed injury to have resolved and he is being treated for conditions unrelated to the LIRR incident."
>
> The employee's treating physicians dispute the Carrier's medical determination (see notes attached). Therefore, this Organization is requesting that a Panel of Doctors be established to determine if his continuing disability is a result of the on-the-job injury.
>
> Please contact the County Medical Society from the employee's county of residence to select a panel doctor to answer the following question:
>
> > *"In your professional medical opinion is the employee's disability a result of the on-the-job injury?"*
>
> Please advise this Organization of the name of the panel doctor selected, ensure that Mr. Badolato's status remains D/A pending the panel decision and that his pay is not interrupted.

*Id.* (emphasis in original).

On September 5, 2013, Plaintiff was examined by the selected panel doctor, Dr. Gregg Szerlip, a licensed anesthesiologist and pain management physician. *See* Medical Report of Dr. Gregg M. Szerlip, dated Sept. 5, 2013 ("Szerlip Report"), annexed as Ex. E to Blumenschein Affirm. Dr. Szerlip issued a report in which he assessed Plaintiff as having a "Resolved Left

3

foot contusion." *Id.* at 3.  Specifically, the report states that "it has been determined that causality for a left foot contusion has been established regarding the injury of May 5, 2013." *Id.* The report further states that Dr. Szerlip "do[es] not see evidence of complex regional pain syndrome . . . based on objective physical findings, diagnostic testing, and the fact that a triple phase bone scan has not been performed." *Id.*  Dr. Szerlip's report is affirmed under the penalty of perjury and is addressed to a company called Juris Solutions, Inc. in Syosset. *Id.* at 1, 3.

Christopher Yodice is an Assistant Director of Employee Services at the LIRR's Medical Department. *See* Blumenschein Affirm. ¶ 4(g). On September 18, 2013, Yodice promulgated a "Change of Status Notice" which stated that Plaintiff's D/A status had ended and that his status has been changed from D/A to D/S. *See* Change of Status Notice, annexed as Ex. F to *id.* Yodice explains the reasons for this change as follows:

> A Panel Examination (Causality) was conducted on September 5, 2013. The Panel physician determined that the employee's initial injury, which was causally related to the [May 5, 2013] incident, is resolved and that there is no evidence of complex regional pain syndrome. Therefore. all time paid in connection to this incident from June 12, 2013 (the initial status change) forward will be marked as/changed to D/S.

*Id.*  Plaintiff returned to work on January 6, 2014.  Blumenschein Affirm. ¶ 4(h).

On March 7, 2014, Plaintiff commenced the instant FELA action against the LIRR. *See* Compl.  The LIRR filed an Answer on March 28, 2014 asserting several affirmative defenses, including failure to mitigate damages. *See* Answer ¶ 8.

As noted, the LIRR has conceded liability for Plaintiff's injuries. However, the parties dispute the extent of Plaintiff's injuries and the resulting amount of damages. Plaintiff alleges that he suffered the following injuries as a result of the accident:  (1) "Trauma left foot with crush injury, left foot"; and (2) "Resulting Complex Regional Pain Syndrome (CRPS), left foot

4

and Sympathetic CRPS, left wrist, requiring invasive Stellate Ganglion nerve blocks." Flynn Affirm. ¶ 6. Plaintiff seeks to recover $64,000 in lost wages for the 35-week period from May 5, 2013 to January 6, 2014 when he was out on disability. *See id.* The LIRR disputes this figure and asserts that Plaintiff's wage loss is $8,091.85, with a lien of $5,983.10 for the amount of disability pay Plaintiff received between May 5, 2013 and June 12, 2013. *See* Blumenshein Affirm. ¶ 5.

### III. THE PENDING MOTION

#### A. Violation of Rule 26(a)(1)(A)

Plaintiff argues that, because the LIRR failed to comply with its disclosure obligations under Fed. R. Civ. P. 26, it should be precluded from offering at trial expert testimony by Dr. Szerlip as well as the testimony of LIRR representative Christopher Yodice. Plaintiff asserts that the LIRR: (1) did not disclose Dr. Szerlip or Mr. Yodice as witnesses in its Fed. R. Civ. P. 26(a)(1)(A) Initial Disclosures; (2) did not supplement its disclosures to include Dr. Szerlip and Mr. Yodice while discovery was ongoing as required under Rule 26(e); (3) did not provide Plaintiff with an expert report or otherwise comply with the expert disclosure requirements under Rule 26(a)(2)(B); and (4) first disclosed Dr. Szerlip and Mr. Yodice in the proposed JPTO filed on May 5, 2015. *See* Pl.'s Mem. at 2-3; Flynn Affirm. ¶¶ 12-12.6. Although the LIRR contends that it produced Dr. Szerlip's September 5, 2013 medical report during discovery, Plaintiff disputes this assertion. *See* Flynn Affirm. ¶ 18-19.

Plaintiff argues that the appropriate sanction for the LIRR's conduct is preclusion of Dr. Szerlip's testimony under Rule 37(c). *See* Pl.'s Mem. at 3-5. According to Plaintiff, the LIRR "has failed to provide any reasonable explanation as to why the delayed disclosure is substantially justified or harmless." *Id.* at 4. Plaintiff further asserts that preclusion is warranted

5

under the four-factor test set forth in *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006), particularly in light of the prejudice Plaintiff would suffer if the LIRR were permitted to disclose Dr. Szerlip on the eve of trial when Plaintiff has not had the opportunity to depose Dr. Szerlip or evaluate his credentials. Flynn Affirm. ¶ 13; Pl.'s Mem. at 4. Finally, Plaintiff asserts that the LIRR has acted in bad faith by failing to disclose Dr. Szerlip in an "attempt[] to put the plaintiff at a disadvantage" during trial. Pl.'s Mem. at 6.

The LIRR does not dispute that it did not disclose Dr. Szerlip or Mr. Yodice in its Rule 26(a)(1)(A) Initial Disclosures and that it never supplemented those disclosures to include Dr. Szerlip or Mr. Yodice. However, the LIRR maintains that, contrary to Plaintiff's contentions, it produced to Plaintiff a copy of Dr. Szerlip's September 5, 2013 medical report, along with Plaintiff's complete medical file, on September 19, 2014. *See* Blumenschein Affirm. ¶¶ 4(l), 6-7. Because Plaintiff was in possession of Dr. Szerlip's report eight months prior to the filing of the JPTO, the LIRR asserts that Plaintiff cannot now claim that he is "surprised" by the inclusion of Dr. Szerlip on the LIRR's witness list. *Id.* ¶ 6.

The LIRR further argues that compliance with Rule 26(a)(2)(B) was not required here because Dr. Szerlip is not an expert witness. *See* Blumenschein Affirm. ¶ 7; Def.'s Opp'n at 4-6. The LIRR notes that Dr. Szerlip is neither an employee of the LIRR, nor was he retained or specially employed by the LIRR to provide expert testimony in this case. *See id.*; *see also* Fed. R. Civ. P. 26(a)(2)(B). Rather, "Dr. Szerlip was the designated Panel Doctor accepted by both the union and the LIRR in response to a request by Mr. Simon, the General Chairman of the union, for a Panel Doctor." Blumenschein Affirm. ¶ 7. The LIRR also points out that Dr. Szerlip's medical opinions and medical report, dated September 5, 2013, could not have been

prepared in anticipation of litigation because Plaintiff had not commenced this lawsuit at that time. *See* Def.'s Opp'n at 4.

Ultimately, the LIRR contends that "Dr. Szerlip was not an 'expert,' but rather a 'viewer' or an 'actor' with respect to the facts obtained and opinions formed based on his examination of the plaintiff." *Id.* (citing *Quarantillo v. Consol. Rail Corp.*, 106 F.R.D. 435 (W.D.N.Y. 1985)). *Id.* The LIRR explains: "where a witness will testify as to information acquired, not in preparation for trial, but rather because he was an actor or viewer with regard to occurrences that are part of the subject matter of the lawsuit, that witness need not be disclosed as an expert." *Id.* at 5 (citing *Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F. Supp. 1566 (N.D. Ill. 1996)). Thus, the LIRR urges that, based on the circumstances presented here, Dr. Szerlip "should be treated as an ordinary witness" rather than an expert subject to Rule 26(a)(2)(B). *Id.* (citing *Harasimowicz v. McAllister*, 78 F.R.D. 319 (E.D. Pa. 1978)).

The question whether Dr. Szerlip is an expert is really a secondary issue here. Pursuant to Rule 26(a)(1)(A), a party, without awaiting a discovery request, must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims and defenses." Fed. R. Civ. P. 26(a)(1)(A). The Court must determine whether the LIRR violated Rule 26(a)(1)(A) by failing to include Dr. Szerlip and Christopher Yodice in its Initial Disclosures. Subsequent to receiving the motion *in limine*, the Court directed counsel for both sides to submit copies of their Initial Disclosures as well as any supplements to those disclosures. *See* September 12, 2016 Electronic Order. Neither Dr. Szerlip nor Christopher Yodice's name appears in the Initial Disclosures of either side. *See* DE 33, 34, 35. Plaintiff served supplemental disclosures, but these did not name Szerlip or Yodice while discovery was under way. Defendant LIRR did not

supplement its Initial Disclosures at any time during the discovery period. Nevertheless, Defendant asserts that it has satisfied its disclosure obligations because it produced a copy of Dr. Szerlip's September 5, 2013 medical report as part of Plaintiff's complete medical file during discovery.

"Many courts in this Circuit . . . have held that the mere mention of a name in a deposition or interrogatory response is insufficient to satisfy Rule 26(a)(1)(A)[.]" *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72 (E.D.N.Y. 2012) (collecting cases). "Rather, to satisfy Rule 26, parties must make an unequivocal statement that they may rely upon an individual on a motion or at trial." *Id.* at 73. "The purpose of this disclosure is to alert an opposing party of the need to take discovery of the named witness." *Pal v. New York Univesity*, No. 06 Civ. 5892, 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008) (citing *Alfano v. Nat'l Geographic Channel*, No. 06-CV-3511, 2007 WL 2982757, at *1 (E.D.N.Y. Oct. 5, 2007) (Rule 26(a)(1) requires the disclosure to be "not merely that a person is a potential source of information, but that the party may call upon him to provide it.").

Applying these standards, the Court concludes that Defendant violated Rule 26(a)(1)(A) by failing to identify witnesses Szerlip and Yodice in its Initial Disclosures. The case law makes clear that, even if Plaintiff was aware that these individuals existed, that awareness did not absolve Defendant of its Rule 26(a)(1)(A) disclosure obligation, which "is fulfilled only if [Defendant] informed [Plaintiff] that [it] might call the witness[es] in support of [its] claims or defenses." *Pal*, 2008 WL 2627614, at *4 (citing *Alfano*, 2007 WL 2982757, at *1). Defendant did not inform Plaintiff of its intent to do so here. Instead, Defendant's counsel asserts that he provided Dr. Szerlip's report and Plaintiff's medical file as part of Defendant's document production during discovery. That "simply did not provide [Plaintiff] with fair warning of the

8

need to take discovery from [them]." *Id.*; *see also Thieriot v. Jaspan, Schlesinger, Hoffman, LLP*, No. CV 07-5315, 2010 WL 4038765, at *5 (E.D.N.Y. Sept. 30, 2010) (stating that the attempt by counsel for the defendant "to diminish" his duty to supplement under Rule 26 "by arguing that Plaintiffs have been aware of witness Forbes since the beginning of this lawsuit is unavailing, at best"). Finally, Defendant's bald assertion, without citation to supporting case law, that Plaintiff should have anticipated that the LIRR would call Dr. Szerlip as a witness because his report was turned over as part of Plaintiff's medical file during discovery -- an assertion that Plaintiff's counsel disputes -- is unpersuasive and runs counter to the purposes of Rule 26(a)(1)(A).

### B. Preclusion Sanction Under Rule 37(c)(1)

Plaintiff argues that the Defendant LIRR should be precluded from introducing Dr. Szerlip and Christopher Yodice as witnesses at trial. Having found that Defendant failed to comply with Rule 26(a)(1)(A), the Court must consider whether Defendant's non-compliance could be considered substantially justified or harmless under Rule 37(c). *See* Fed. R. Civ. P. 37(c)(1)). "Substantial justification may be demonstrated where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request or if there exists a genuine dispute concerning compliance." *Lujan*, 284 F.R.D. at 68 (quoting *Ritchie Risk–Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012)) (internal quotation marks omitted). "An omission or delay in disclosure is harmless where there is an absence of prejudice to the offended party." *Id.* (internal quotation marks and citation omitted).

Here, the Defendant has not demonstrated that its failure to disclose Szerlip and Yodice was substantially justified or harmless. There is no question that Defendant was required to

disclose these witnesses in its Initial Disclosures and Defendant's counsel has not shown that he "lacked the ability to make [his] Rule 26(a)(1)(A) disclosures with respect to any of the newly-identified witnesses before discovery closed." *Pal*, 2008 WL 2627614, at *4. To the contrary, it appears that the Defendant has known that it might call Dr. Szerlip as a witness as far back as September 5, 2013 when its counsel purportedly produced Dr. Szerlip's medical report during discovery. Blumenschein Aff. ¶¶ 4 (1), 6-7. *See Edwards v. City of New York*, No. 08-CV-2199, 2009 WL 2167917, at *3 (E.D.N.Y. July 20, 2009) (noting that the plaintiff "has long known both of the existence of the witnesses at issue and of his obligation to disclose their identities to the defendants" and holding that the plaintiff "should not be permitted to sandbag the defendants at trial with the testimony of such witnesses"). The Court also points out that Plaintiff's counsel maintains that plaintiff never received the Szerlip medical report.

Nor can Plaintiff's conduct be considered harmless. *See* Fed. R. Civ. P. 37(c)(1)). If the Court were to permit these untimely disclosures, it would have to re-open discovery, at the 11th hour and on the very eve of trial, to afford Plaintiff an opportunity to depose the additional witnesses. In light of the anticipated physician testimony already scheduled for this case, the previously adjourned trial date, the re-scheduling of physicians to a different trial date would complicate matters even further. For these reasons, the Court concludes that Defendant's conduct was neither substantially justified nor harmless.

The Court now turns to the factors identified by the Second Circuit in *Patterson v. Balsamico,* 440 F.3d 104 (2d Cir. 2006) in considering whether the sanction of preclusion is warranted under Rule 37(c). The first *Patterson* factor – a party's explanation for its failure to comply with discovery – weighs in favor of preclusion. Nowhere in Defendant's Memorandum of Law is the failure to include Dr. Szerlip and Christopher Yodice's names in Defendant's

Initial Disclosures even addressed. Rather, counsel's entire argument focuses on Defendant's contention that Dr. Szerlip is not testifying as an expert, and, thus no expert report is required and the witness should be permitted to testify. *See generally* Def.'s Opp'n. This argument misses the mark. In their Joint Proposed Discovery Plan [DE 6] submitted on April 29, 2014, the parties represented that fact discovery would be completed by November 3, 2014. That representation was also made to the Court at the Initial Conference held on May 5, 2014. *See* DE 9. At the October 7, 2014 Discovery Status Conference, the parties reported that document discovery had been completed and that depositions would be completed by December 2, 2014. *See* DE 12. At that time, the parties asked for settlement conference which the Court set for January 8, 2015. *Id.* The Court also directed that if the case did not settle, the proposed Joint Pre-Trial Order had to be filed on ECF by February 12, 2015 and the Pre-Trial Conference would be held on February 25, 2015. *Id.* Fact discovery essentially closed on December 2, 2014. In the nine months from the Initial Conference to the end of depositions, the LIRR never supplemented its Initial Disclosures to include these two witnesses. Counsel submitted their proposed Joint Pre-Trial Order on May 5, 2015, in which Defendant listed Dr. Szerlip and Christopher Yodice as witnesses for the very first time. *See* DE 15. At the Pre-Trial Conference on May 13, 2015, this Court addressed Plaintiff's objection to the witnesses and noted Plaintiff's argument that the Defendant had failed to comply with Rule 26. Defendant responded that Dr. Szerlip was not testifying as an expert and that the records of his examination of the Plaintiff had been turned over during discovery. I directed counsel to take up the issue before Judge

Seybert by means of a motion *in limine* prior to trial and I certified the case back over to Judge Seybert as trial-ready.[1]  *See* DE 16.

At the request of the parties, the trial was adjourned without date based on the Plaintiff's allegedly having suffered an aggravation of his injuries, having developed an infection and having been hospitalized.  *See* DE 25, 26.  Additional discovery became necessary since Plaintiff ascribed the subsequent injury and damages to the underlying injury.  *See* DE 27.  Plaintiff thereafter renewed his motion *in limine* [DE 30].

"[A]ttorney neglect or oversight is not an acceptable explanation for failure to disclose." *Gotlin v. Lederman*, No. 04-CV-3736, 2009 WL 2843380, at *4 (E.D.N.Y. Sept. 1, 2009) (finding that the "unsatisfactory explanation" the plaintiff's counsel "for his failure to disclose the [r]ecords weighs very heavily in favor of preclusion") (citing *Haas*, 282 F. App'x at 86 ("Although the late discovery of [a potential witness] was apparently due to plaintiff's counsel's neglect and not 'bad faith,' bad faith is not required and counsel has offered no adequate explanation for this untimely disclosure.")).  Here, the Court finds that Defendant has not offered a reasonable excuse for the failure to identify Dr. Szerlip and Christopher Yodice as witnesses at any time prior to the filing of the Joint Pre-Trial Order.  Finally, for the reasons already explained, Defendant's assertion that Plaintiff should nonetheless have been aware that Dr. Szerlip could be called as a witness is unavailing, as Rule 26(a)(1)(A) specifies that a party must disclose the names of ***any*** witness that the party ***may*** use to support its claims or defenses so as not to sandbag his or her adversary before trial.  *See Lujan*, 284 F.R.D. at 68 (citing *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)).

---

[1]  On June 11, 2015, the parties consented to the jurisdiction of a United States Magistrate Judge for all purposes.

The second *Patterson* factor – the importance of the testimony to Defendant – favors the Defendant. Counsel for the LIRR contends that Plaintiff "is bound by the findings of Dr. Szerlip because those findings came about [as] the result of his request for a panel – – or neutral – – Doctor to resolve the differences between his claims and the findings made by the LIRR Medical Department." Def.'s Opp'n. at 3.

The third *Patterson* factor – the prejudice suffered by the Plaintiff – weighs in favor of Plaintiff. As discussed, permitting the late disclosure of Szerlip and Yodice would require the Court to re-open discovery on the eve of trial so that Plaintiff could depose those witnesses. This trial was already adjourned once. Having to reschedule the physicians who have set aside the time frame for their trial testimony with the trial just a few weeks away would cause an undue hardship to the Plaintiff, both in terms of time and expense.

As to the fourth *Patterson* factor – the possibility of a continuance – the trial date has been set for some time. Although "a continuance is always theoretically possible, the closure of discovery weighs against a continuance." *Lujan*, 284 F.R.D. at 76.; *see Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*, No. 08–CV–2540, 2011 WL 1239867, at *4 (E.D.N.Y. Mar. 30, 2011); *Morritt v. Stryker Corp.*, No. 07-CV-2319, 2011 WL 3876960, at *7 (E.D.N.Y. Sept. 1, 2011). The Court therefore finds that this factor also weighs in favor of the Plaintiff.

"The Court has the ultimate discretion on whether to preclude witnesses from testifying at trial pursuant to Rule 37(c)(1)." *Lopez v. City of New York*, No. 11-CV-2607, 2012 WL 2250713, at *1 (E.D.N.Y. June 15, 2012); *see also Design Strategy*, 469 F.3d at 297–98 (stating that a "district court has wide discretion to impose sanctions" under Rule 37). Having weighed the relevant *Patterson* factors, the Court concludes that preclusion is warranted here with respect

to the testimony of Dr. Szerlip and Christopher Yodice and will not permit Defendant to amend its witness list to include them. *See Pal*, 2008 WL 2627614, at *6 (precluding the defendant from offering testimony or sworn statements at trial from four witnesses who were first disclosed on the final day of discovery) (citing, *e.g.*, *Ehrlich v. Inc. Vill. of Sea Cliff*, No. 04-CV-4025, 2007 WL 1593223, at *3 (E.D.N.Y. June 1, 2007) (precluding witness testimony under Rule 37(c)(1) for failure to comply with Rule 26(a) (1)(A)); *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, No. 02-CV-9144, 2005 WL 712232, at *2 (S.D.N.Y. Mar. 28, 2005).

Even if the Court had decided to grapple with the notion of Dr. Szerlip's status as an expert, or rather a "viewer," any change in the outcome here is doubtful. The Court finds the *Quarantillo* case, relied upon by the Defendant, is readily distinguishable. Def.'s Opp'n. at 4-5. First, *Quarantillo* is a 1985 decision dealing with expert records and testimony under then Rule 35(b), which is no longer in effect. Plaintiff in that case moved for a protective order to preclude or limit the defendant from taking the ***deposition*** of a neurologist who had treated the plaintiff for 14 years. *Quarantillo*, 106 F.R.D. at 437. Plaintiff argued that he was calling the neurologist as his own witness and that the only thing the defendant was entitled to was an expert report. *Id*. There was no issue as to the neurologist not having been disclosed, nor was the case on the eve of trial, after discovery had closed, as is the situation here. In addition, Dr. Szerlip was never plaintiff's "treating physician."

Nor does the 1996 decision in *Zarecki v. Nat'l Railroad Passenger Corp*., 914 F. Supp. 1566 (N.D. Ill. 1996 ) from the Northern District of Illinois address the real problem of the failure to list two witnesses in a party's Rule 26 Initial Disclosures. Instead, the plaintiff in *Zarecki* , who was suffering from carpal tunnel syndrome, argued that she did not have to disclose her treating physician as an expert because his testimony pertained to information

14

obtained during the course of his treatment of her. *Zarecki*, 914 F. Supp. at 1573. The court disagreed, finding that the physician was providing testimony in an expert capacity. As such, the court struck his affidavit. *Id.*

### III. CONCLUSION

For all of the foregoing reasons, the Plaintiff's Motion *In Limine* to preclude the LIRR from offering the testimony of Dr. Gregg Szerlip and Christopher Yodice as well as the medical reports/records of Dr. Szerlip is GRANTED.

**SO ORDERED.**

Dated: Central Islip, New York
October 24, 2016

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge